# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CA-01865-SCT

*HARRISON COUNTY COMMERCIAL LOT, LLC*

*v.*

*H. GORDON MYRICK, INC. AND H. GORDON MYRICK, JR., INDIVIDUALLY*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/09/2010 |
| TRIAL JUDGE: | HON. JOHN C. GARGIULO |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEPHEN GILES PERESICH |
| | RANDI PERESICH MUELLER |
| | JOHANNA MALBROUGH MCMULLAN |
| ATTORNEYS FOR APPELLEES: | CHRISTOPHER SOLOP |
| | BRENDA TANNER REDFERN |
| | LYNN PATTON THOMPSON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART AND REMANDED.  ON CROSS-APPEAL: AFFIRMED IN PART AND REMANDED - 01/31/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2010-CA-01891-SCT

*HARRISON COUNTY COMMERCIAL LOT, LLC*

*v.*

*H. GORDON MYRICK, INC. AND H. GORDON MYRICK, JR.*

DATE OF JUDGMENT:    11/09/2010
TRIAL JUDGE:      HON. JOHN C. GARGIULO
COURT FROM WHICH APPEALED:  HARRISON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:  STEPHEN GILES PERESICH
              RANDI PERESICH MUELLER
              JOHANNA MALBROUGH MCMULLAN
ATTORNEYS FOR APPELLEES:  CHRISTOPHER SOLOP
              BRENDA TANNER REDFERN
              LYNN PATTON THOMPSON
NATURE OF THE CASE:    CIVIL - CONTRACT
DISPOSITION:       ON DIRECT APPEAL: AFFIRMED IN PART
              AND REMANDED.  ON CROSS-APPEAL:
              AFFIRMED IN PART AND REMANDED -
              01/31/2013
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE DICKINSON, P.J., CHANDLER AND KING, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1. H. Gordon Myrick, Inc. (Myrick)[1] contracted with Harrison County Commercial Lot (HCCL) to build HCCL an executive office building.  The parties' contract contained an arbitration provision, which excluded aesthetic-effect claims from arbitration.  This case concerns which, if any, of the parties' claims are subject to arbitration.  The trial court determined that the arbitration agreement was valid and ordered arbitration on designated, nonaesthetic claims.  Aggrieved, HCCL appeals and Myrick cross-appeals.

¶2. HCCL contends that all of its claims are related to aesthetic effect and, thus, not subject to arbitration. HCCL also challenges the validity of the arbitration agreement, which

---

[1]Throughout the record, the parties refer to H. Gordon Myrick as "HGM."  We refer to the company as "Myrick" to prevent confusion.

claims are subject to arbitration, and the trial court's ruling on several of its motions. Myrick raises three claims on cross-appeal: whether HCCL waived its right to litigate aesthetic-effect claims, whether the trial court erred by accepting HCCL's untimely aesthetic-effect-claim submission, and whether the trial court erred by not ordering all claims to arbitration.

¶3. We find that the parties' claims are without merit. But it is difficult to determine why the trial court ordered certain punch-list[2] items to arbitration and others not. Thus, we remand to the trial court to provide further explanation on the punch-list items alone.

## FACTS AND PROCEDURAL HISTORY

¶4. HCCL is an owner and developer of commercial buildings, and Myrick is a contractor. On March 26, 2008, the parties contracted for Myrick to build HCCL an executive-office building – the Cain Office Building – in Gulfport, Mississippi. The parties used a standard construction contract created by the American Institute of Architects (AIA) and amended the document to suit their needs. The contract contained provisions regarding mediation and arbitration of certain disputes.

¶5. Construction commenced in April 2008, and, by 2009, HCCL was unhappy with Myrick's choice of project manager and Myrick's failure to complete the project on time. On May 1, 2009, Myrick declared the building substantially complete. On May 4, 2009, HCCL, unsatisfied with the building's appearance, submitted punch-list items for Myrick to

---

[2]In the construction industry, a "punch list" is completed by the owner and given to the builder when the project is near completion. The punch list designates items which must be completed or repaired to satisfy the terms of the construction contract.

3

correct. But, four days later, HCCL terminated Myrick and retained a new contractor to finish the project.

¶6. Thereafter, Myrick filed a construction lien against HCCL. In a letter to HCCL, Myrick agreed to mediate claims regarding the punch-list items, but demanded HCCL pay its outstanding balance. HCCL refused to remit payment, requested Myrick to cancel the lien, and expressed its desire to resolve the dispute through mediation. Unsatisfied with HCCL's response, Myrick filed concurrently a mediation request and a demand for arbitration with the American Arbitration Association on June 16, 2009. And, before mediation occurred, Myrick filed a motion to compel arbitration in the Harrison County Circuit Court.

¶7. Mediation occurred in August 2009 and was unsuccessful. On August 31, 2009, HCCL moved to dismiss Myrick's previously filed motion to compel arbitration, arguing that Myrick had filed its motion prematurely and thus had waived its right to arbitrate. Then, on September 1, 2009, HCCL filed a separate breach-of-contract action against Myrick in the Harrison County Circuit Court and alleged the following claims/relief: removal of wrongful construction lien, slander of title, removal of cloud on title, abuse of legal process, breach of contract, negligence, fraud and intentional misrepresentation, negligent misrepresentation, breach of duty of good faith and fair dealing, accounting, and an injunction regarding arbitration. Myrick moved to dismiss HCCL's complaint and to compel arbitration.

¶8. On January 8, 2010, the trial court entered an order which determined that the parties' contract included a valid, enforceable arbitration agreement. The trial court reserved its ruling on which claims were subject to arbitration, stating it would determine the issue later

4

in a summary proceeding. The trial court instructed the parties to submit a memo detailing which claims they thought were related to aesthetic effect and, thus, not subject to arbitration.[3] The order stated that "expert testimony is not necessary" and "no discovery will be conducted prior to the hearing."

¶9. Following that ruling, HCCL filed a direct appeal and an interlocutory appeal to this Court. Myrick filed a motion to dismiss HCCL's appeals, arguing that the trial court's order failed to dispose of all issues. On March 4, 2010, this Court dismissed HCCL's appeals and remanded the case to the trial court for further proceedings.

¶10. While HCCL's appeals were pending, Myrick filed its aesthetic-claims submission – the affidavit of Lee R. Connell, a registered architect – on February 4, 2010.[4] In his expert opinion, Connell opined that none of HCCL's claims was related to aesthetic effect. On March 16, 2010, HCCL filed its submission. HCCL also filed the affidavits of Starann Lamier, its chief operating officer, and Louis Anglada and Kempton Batia, who were hired to complete the work. HCCL claimed that all of its claims were related to aesthetic effect and, thus, not subject to arbitration. Both parties moved to strike the others' submissions – Myrick's for improper expert testimony and HCCL's for being late. The trial court denied both motions.

---

[3]According to the order, HCCL's submission was due January 29, 2010, and Myrick's submission was due February 12, 2010.

[4]Myrick also filed a second affidavit by Michael Hall Penny, Myrick's vice-president. Penny stated that HCCL's punch-list items were not aesthetic claims. Prior to the hearing, Myrick filed a notice to call Connell as an expert. HCCL opposed the notice. Myrick filed its expert affidavit with the trial court. The trial court denied HCCL's motion after the hearing.

5

¶11.   Following oral argument, the trial court ruled that some of HCCL's punch-list items were aesthetic and, thus, would be submitted to a jury.  The trial court's order stated that items not listed were subject to arbitration.  Aggrieved, HCCL appeals, and Myrick cross-appeals the trial court's order.

**ANALYSIS**

¶12.   A grant or denial of a motion to compel arbitration is reviewed de novo. ***Cmty. Bank of Miss. v. Stuckey***, 52 So. 3d 1179, 1181 (¶12) (Miss. 2010).  Mississippi law, like federal law, favors the enforcement of valid arbitration agreements. ***Smith Barney, Inc. v. Henry***, 775 So. 2d 722, 724 (¶8) (Miss. 2001).  Accordingly, the Federal Arbitration Act (FAA) provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (¶11) (Miss. 2002) (citing 9 U.S.C. § 2).  Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." ***Id***. (citation omitted).

¶13.   The Court does not review the merits of the underlying claim. ***Smith Barney***, 775 So. 2d at 775 (¶9).  Under the Federal Arbitration Act, the Court employs a two-part test: (1) "whether the parties intended to arbitrate the dispute," and (2) "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." ***Scruggs v. Wyatt***, 60 So. 3d 758, 766 (¶17) (Miss. 2001); *see also* ***East Ford***, 826 So. 2d at 713 (¶¶9-10).  The first prong has two considerations: (1) whether there is a valid arbitration agreement, and (2) whether the parties' disputes fall within the scope of that agreement. ***Id***.

6

Because arbitration is a matter of contract, the parties cannot be required to arbitrate any disputes which they did not agree to do so. *Scruggs*, 60 So. 3d at 767 (¶20).

### I. Validity of the Arbitration Agreement

¶14. The trial court found that the arbitration agreement was valid and enforceable. HCCL argues that the arbitration agreement is not valid because it fails to include an express waiver of its right to a jury trial. HCCL also contends that the contract is ambiguous, providing for both arbitration and the institution of legal or equitable proceedings. Conversely, Myrick maintains that the arbitration agreement is unambiguous, binding, and enforceable.

### A. Ambiguity

¶15. "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400 (Miss. 1997). When determining whether a valid arbitration agreement exists, we employ ordinary principles of contract law. *Terminix Int'l., Inc. v. Rice*, 904 So. 2d 1051, 1055 (¶9) (Miss. 2004). One principle instructs courts that, in determining whether a contract is ambiguous, they must review the document as a whole. *Cherokee Ins. Co. v. Babin*, 37 So. 3d 45, 48 (¶8) (Miss. 2010). If the contract is not ambiguous, the court should "accept the plain meaning of a contract as the intent of the parties . . . ." *Ferrara v. Walters*, 919 So. 2d 876, 882 (¶13) (Miss. 2005). Typically, we construe ambiguities against the drafter of the contract. *Gulf Ins. Co. v. Neel-Schaffer, Inc.*, 904 So. 2d 1036, 1049 (¶44) (Miss. 2004). But in the case of arbitration, that doctrine "must succumb to the federal policy" "to construe ambiguities concerning the scope of arbitrability in favor of arbitration." *Id.* at 1049-50 (¶¶44-45). We address two issues of ambiguity:

7

whether the parties intended to arbitrate and what exactly is "aesthetic effect." The latter will be discussed in section five below. Reviewing the contract as a whole, the Court finds no ambiguity regarding whether the parties intended to arbitrate.

¶16.   The parties' contract provides for the resolution of claims and disputes. First, the parties must mediate:

> 4.5.1   Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived . . . shall, be subject to mediation as a condition precedent to arbitration *or* the institution of legal or equitable proceedings by either party.

Then, the parties must arbitrate:

> 4.6.1   Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived . . . shall, after decision by the Owner[5] or 30 days after submission of the Claim to the Owner, be subject to arbitration.   Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

> 4.6.2  Claims not resolved by mediation shall be decided by arbitration . . . .

¶17.   HCCL contends that the language in section 4.5.1 – that "mediation [is] a condition precedent to arbitration *or* the institution of legal or equitable proceedings" – does not reflect a clear intent to arbitrate. HCCL claims that the disjunctive "or" allows it to choose whether to arbitrate or to litigate its claims, therein creating ambiguity. Conversely, Myrick states that a review of the contract as a whole shows no ambiguity. We agree.

¶18.   Reviewing the contract as a whole, the arbitration agreement is not ambiguous. Section 4.5 provides mediation as a method of alternative dispute resolution for those claims subject to arbitration and those claims which are not. Sections 4.6.1 and 4.6.2, which directly

_____

[5]Throughout the contract, Lamier, on behalf of HCCL, replaces the term "Architect" with the term "Owner."

address arbitration, state clearly that mediation is a condition precedent to arbitration, and arbitration is the sole method of dispute resolution for all claims, except those related to aesthetic effect. The language in section 4.5 (mediation) is consistent with the parties' agreement to arbitrate. Thus, no ambiguity exists regarding whether the parties intended to arbitrate. HCCL's argument is without merit.

## B. Right to a Jury Trial

¶19. Next, HCCL complains that the arbitration agreement failed to include an express waiver of its right to a jury trial; thus, it is invalid. Myrick counters that there is no such requirement.

¶20. Mississippi Code Sections 11-15-101 to 11-15-143 address arbitration agreements in construction contracts. The statutes provide, in pertinent part, that:

> Two (2) or more parties referred to in Section 11-15-101 may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. Such agreement or provision shall be valid, enforceable and irrevocable without regard to the justiciable character of the controversy.

Miss. Code Ann. § 11-15-103 (Rev. 2003). The arbitration provision in question provides that "[a]ny Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived . . . shall . . . be subject to arbitration." HCCL claims that the provision must provide an express waiver of a jury trial, but caselaw does not support its position.

¶21. HCCL cites two cases in support of its position, but its reliance on these cases is misplaced. In *B.C. Rogers Poultry, Inc. v. Wedgeworth*, the Court addressed whether an

9

arbitration agreement applied retroactively to disputes arising from previous contracts which did not contain arbitration provisions. ***B.C. Rogers Poultry, Inc. v. Wedgeworth***, 911 So. 2d 483 (Miss. 2005). The Court stated, "[t]his Court remains unconvinced, as the law requires, that Wedgeworth knowingly, intelligently, and voluntarily waived his fundamental right to a jury trial, when all contracts in effect at the time of the alleged tortious conduct . . . failed to contain arbitration clauses." ***Id.*** at 487 (¶10). The circumstances of ***B.C. Rogers*** simply are not applicable to this case.

¶22. In ***Pre-Paid Legal Services***, the Court decided whether language contained in a pre-paid, legal-services plan constituted a binding agreement to arbitrate. ***Pre-Paid Legal Servs., Inc. v. Battle***, 873 So. 2d 79 (Miss. 2004)***.*** The provision stated:

> **K. Settlement of Disputes**: In the event of a dispute, the parties will agree on an impartial attorney who will decide such dispute and that decision will be binding on all parties to such dispute.

***Id.*** at 81 (¶3). Also, the document did not require the plaintiffs' signatures. ***Id***. The Court found that this language was insufficient to create a binding arbitration agreement, reasoning:

> [H]ere there was no notice, no discussion, and no negotiation of the arbitration agreement. Further, based upon the language in this clause, we do not find that an average citizen would realize that he or she is giving up his or her right to a trial by jury under the broad, general language contained in the pre-paid legal expense agreement.

***Id.*** at 84 (¶15). Further, the Court found that the agreement was ambiguous because it also contemplated litigation. ***Id.*** at 84 (¶16). Thus, the Court affirmed partial summary judgment in favor of the plaintiffs and remanded to the trial court for further proceedings. ***Id.*** at 84 (¶¶18-19).

10

¶23.   Unlike the provision in *Pre-Paid Legal Services*, the arbitration provision in HCCL's

and Myrick's contract is clear and unambiguous.  In *Harry Baker Smith Architects II, PLLC*

*v. Sea Breeze I, LLC*, those parties utilized a similar arbitration provision, and the Court of

Appeals found that the provision articulated clearly the parties' agreement to arbitrate.[6]

*Harry Baker Smith Architects*, 83 So. 3d 395, 398 (¶11) (Miss. Ct. App. 2011).  Also,

despite HCCL's claim that it did not intend to waive its right to a jury trial, the parties clearly

negotiated the contract.  Lamier, on behalf of HCCL, negotiated the contract, sometimes

initialing deletions and additions to the contract.  HCCL is a sophisticated business, not "an

average citizen."  Thus, HCCL should have been aware of the consequences of the arbitration

agreement which it negotiated.

¶24.   No caselaw suggests that, to be valid, an arbitration agreement must include an

express statement which waives the right to a jury trial.  In contrast, this Court has stated that:

> [T]he Constitution does not "confer the right to a trial, but only the right to
> have a jury hear the case once it is determined that the litigation should
> proceed before a court.  If the claims are properly before an arbitral forum
> pursuant to an arbitration agreement, the jury trial right vanishes."

*McKenzie Check Advance of Miss., LLC v. Hardy*, 866 So. 2d 446, 455 (¶30) (Miss. 2004)

(citations omitted).  Section 11-15-103 requires only a written agreement to arbitrate.  The

language in the contract is an express, written agreement between the parties to arbitrate

---

[6]The arbitration provision provided that: "Claims, disputes, and other matters in question between the parties that are not resolved by mediation *shall* be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." *Harry Baker Smith Architects*,  83 So. 3d at 398 (¶11).

11

claims arising out of the contract, except those related to aesthetic effect. Thus, we find that HCCL's argument is without merit.

## II. Motion to Dismiss

¶25. The Court reviews a motion to dismiss de novo. *Loggers, LLC v. 1 Up Technologies, LLC*, 50 So. 3d 992, 993 (¶4) (Miss. 2011). HCCL argues that Myrick waived its right to arbitrate by filing suit, and the trial court erred by denying its motion to dismiss on this ground. Myrick counters that it did not waive its right to arbitrate by filing a motion to compel arbitration, and its motion was filed properly.

¶26. On June 16, 2009, Myrick simultaneously filed a request for mediation and a demand for arbitration. By letter dated July 1, 2009, HCCL opined that its claims were not subject to arbitration. Based on other correspondences between the parties, the parties were clearly at odds and reluctant to comply with the arbitration agreement. On July 17, 2009, prior to mediation, Myrick filed its motion to compel arbitration.

¶27. HCCL contends that the trial court should have dismissed Myrick's "suit" for failure to fulfill a condition precedent to litigation – mediation. Myrick argues that it simply filed a demand for arbitration, which does not violate the arbitration agreement. The caselaw upon which HCCL relies addresses statutory, presuit notice requirements for medical-malpractice suits. *See* Miss. Code Ann. § 15-1-36 (Rev. 2012); *see also Thomas v. Warden*, 999 So. 2d 842, 845-47 (Miss. 2008) (dismissing for failure to fulfill presuit notice requirement); and *Price v. Clark*, 21 So. 3d 509 (Miss. 2009). Those cases are not applicable here.

12

¶28. The record shows that both parties were reluctant to comply with their mediation/arbitration agreement. Section 11-15-105 gives parties permission to file a motion to compel arbitration:

> Any party to an agreement or provision for arbitration subject to sections 11-15-101 through 11-15-143 claiming the neglect or refusal of another party thereto to comply therewith may make application to the court as described in sections 11-15-133 and 11-15-135 for an order directing the parties to proceed with arbitration in accordance with the terms of such agreement or provision. If the court finds that no substantial issue exists as to the making of the agreement or provision, it shall grant the application. If the court shall find that a substantial issue is raised as to the making of the agreement or provision, it shall summarily hear and determine such issue and shall, consistent with such determination, grant or deny the application.

Miss. Code Ann. § 11-15-105(1) (Rev. 2004). Based on Section 11-15-105(1), the motion to compel arbitration was proper. The trial court properly denied HCCL's motion to dismiss; thus, we find this issue is without merit.

### III. Waiver

#### A. HCCL: Right to Arbitrate

¶29. HCCL also maintains that Myrick waived its right to arbitrate by filing its complaint prior to mediation and arbitration. A party may waive the right to compel arbitration where it actively participates in litigation or takes other actions inconsistent with the right to compel arbitration which substantially invoke the judicial process to the detriment or prejudice of the other party. *In re Tyco Int'l (US) Inc.*, 917 So. 2d 773, 779-80 (¶¶27-28) (Miss. 2005). But Myrick filed a motion to compel arbitration, not a lawsuit on the merits.

¶30. "Parties seeking to enforce arbitration are to file a [motion to compel arbitration] immediately upon discovery that the controversy or suit is subject to an arbitration

13

agreement." *Century 21 Maselle and Assocs., Inc. v. Smith*, 965 So. 2d 1031, 1038 (¶10) (Miss. 2007) (simultaneous request for a jury trial and a motion to compel arbitration did not waive arbitration). The idea that Myrick waived its right to arbitrate by filing a motion to compel arbitration is illogical.

¶31. As previously stated, Section 11-15-105(1) specifically allows a party to file a motion to compel arbitration if the opposing party neglects or refuses to comply. Miss. Code Ann. § 11-15-105(1) (Rev. 2004). HCCL argues that Myrick's motion to compel arbitration went beyond a simple demand for arbitration. But the record does not support its assertion. The trial court properly rejected HCCL's waiver argument; thus, we find that this issue is without merit.

### B. Myrick: Right to Litigate

¶32. On cross-appeal, Myrick claims that HCCL waived its right to litigate its aesthetic-effect claims by including those claims in mediation.[7] HCCL counters that there is no contract provision which prevents the parties from mediating aesthetic-effect claims, and its good-faith attempt to mediate those claims does not constitute waiver.

¶33. Myrick fails to cite any authority in support of its position. It is the appellant's duty to cite authority in support of its position, and the Court considers unsupported assignments of error to be abandoned. *Jones v. Howell*, 827 So. 2d 691, 702 (¶40) (Miss. 2002). Because

---

[7]Myrick also claims that HCCL's aesthetic claims are not aesthetic at all, but regard alleged defects in construction and paving. Myrick further contends that these claims are subject to arbitration.

Myrick fails to cite any authority in support of its position, the argument is barred from review.

### IV. Motions to Strike

¶34. Both parties moved to strike the other's submissions. Myrick moved to strike HCCL's aesthetic-effect submission because it was late. And HCCL moved to strike Connell's expert affidavit as improper expert testimony.

### A. Aesthetic-Effect Submission

¶35. Myrick argues that the trial court erred by denying its motion to strike HCCL's aesthetic-effect submission for being late. Conversely, HCCL contends that its filing of an interlocutory appeal and direct appeal to this Court was good cause for its late submission, and the trial court properly denied Myrick's motion to strike. In response, Myrick urges that HCCL should have filed a stay pending appeal and/or requested an extension of time.

¶36. On January 8, 2010, the trial court entered an order denying HCCL's motion for continuance and motion to dismiss but granting Myrick's motion to compel arbitration. The trial court detailed a timeline for aesthetic-effect-claim submissions. It ordered HCCL to submit its list by January 29, 2010, and ordered Myrick to file its response by February 12, 2010. HCCL filed an interlocutory appeal and direct appeal from this order on January 27, 2010. The Court dismissed HCCL's appeals on March 9, 2010. Later that month, HCCL filed its aesthetic-effect submission.

¶37. Myrick relies on *Bowie v. Montfort Jones Memorial Hospital*, 861 So. 2d 1037 (Miss. 2003), to support its position. In *Bowie*, the court stated:

15

> *Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts*, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril.

*Bowie*, 861 So. 2d at 1042 (¶14) (trial court, in its discretion, granted summary judgment where plaintiff failed to timely designate an expert). And Myrick cited this language in its brief. After considering the arguments of both parties, we find that nothing in the record indicates that the trial court abused its discretion by accepting HCCL's aesthetic-effect submission. This issue is without merit.

### B. Expert Affidavit

¶38. We review the trial court's admission or exclusion of evidence for an abuse of discretion. *Smith ex rel. Smith v. Clement*, 983 So. 2d 285, 288 (¶11) (Miss. 2008). HCCL argues that the trial court erred by denying its motion to dismiss Connell's affidavit , which it claims provided an improper legal opinion on the terms of the contract. According to HCCL, the trial court initially ruled that expert opinions would not be accepted, and it was not allowed to cross-examine Connell or to submit a rebuttal expert report.

¶39. The trial court found that a valid arbitration agreement existed between the parties and reserved its ruling on which claims were subject to arbitration. The trial court ordered the parties to submit a memo detailing which claims they thought were related to aesthetic effect. The order provided that "[t]he Court finds expert testimony *is not necessary* for purposes of this hearing. Accordingly, no discovery will be conducted prior to the hearing." (Emphasis added.)

¶40. Myrick submitted Connell's affidavit as its aesthetic-effect submission. Connell opined that, based on his experience in the construction industry, none of HCCL's claims was related to aesthetic effect and, thus, all were subject to arbitration. Later, HCCL submitted its aesthetic-effect claims along with affidavits. In one affidavit, Lamier stated which claims she thought were related to aesthetic effect.

¶41. Arbitration agreements are contractual in nature; thus, parties will not be required to arbitrate matters which they did not consent to arbitrate. *Scruggs v. Wyatt*, 60 So. 3d 758, 767 (¶20) (Miss. 2011). HCCL argues that Connell's affidavit was improper expert testimony, which cannot be used to defeat its position on a question of law – which claims are subject to arbitration. But because HCCL failed to provide any rebuttal, and the trial court did not rely on Connell's affidavit to reach its judgment, error, if any, is harmless.

¶42. The trial court did not preclude expert opinions, but it deemed that expert opinions were not necessary. At a December 10, 2009, hearing, Myrick offered to call Connell. The trial court responded that it did not intend to hear experts that day because HCCL should have an opportunity to prepare for that testimony and call a rebuttal expert. The trial court gave HCCL an opportunity to respond, and HCCL's counsel contemplated retaining its own expert. The next hearing was held on September 30, 2010, and, by that time, HCCL had not filed any expert affidavit. The trial court did not preclude HCCL from challenging Connell's affidavit. Contrary to HCCL's position, the trial court did allow it an opportunity to rebut Connell's affidavit.

¶43. "[W]here error involves the admission or exclusion of evidence, this Court 'will not reverse unless the error adversely affects a substantial right of a party.'" *Haggerty v. Foster*,

17

838 So. 2d 948, 958 (¶25) (Miss. 2002) (citation omitted). HCCL fails to show how it was prejudiced by Myrick's filing. Connell's "expert opinion" is nothing more than a baseless recitation of Myrick's position – that none of the claims is aesthetic. The record indicates that, in making its decision, the trial court placed relatively little to no emphasis on Connell's affidavit, stating:

> That's the affidavit of – . . . – Lee Connell that basically just says all of the plaintiff's claims are structural? . . . . Non-aesthetic? . . . All right. I don't know how that assists the Court, but all right.

The trial court neither mentions the substance of Connell's affidavit in its order nor follows Connell's opinion. Based on the foregoing, we find that error, if any, is harmless.

### V. Scope of Arbitration

¶44. After the arbitration agreement is determined to be valid, the Court must determine whether the parties' claims fall within the scope of the arbitration agreement. The Court must "focus on factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying those claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Scruggs*, 60 So. 3d at 765 (¶16) (quoting *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.*, 372 F.3d 339, 344 (5th Cir. 2004)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor arbitration." *East Ford*, 826 So. 2d at 713 (¶11). Some parties reserve the right to litigate particular claims, and this Court has enforced those contracts. *See Fradella v. Seaberry*, 952 So. 2d 165, 170-72 (¶¶15-20) (Miss. 2007).

¶45. Under the agreement, "[a]ny Claim arising out of or related to the Contract, except Claims relating to aesthetic effect . . . shall . . . be subject to arbitration." In its order, the trial

18

court designated which claims were aesthetic, or *not* subject to arbitration. The trial court further explained that "[a]ll other items in dispute and not identified above as aesthetic *are* subject to binding arbitration . . . ." (Emphasis added.) HCCL maintains that all of its claims are related to aesthetic effect, and the trial court erred by ordering arbitration. On cross-appeal, Myrick complains that the trial court should have ordered arbitration on all claims.

¶46. "Aesthetic effect" is not a legal term. It is a term often used in the construction industry. And "aesthetic effect," as used in construction contracts, should be defined on a case-by-case basis. Other jurisdictions have explored the issue and, for example only, we discuss those cases below.

¶47. The Arkansas Supreme Court has defined "aesthetic" as "pertaining to a sense of the beautiful or to the science of aesthetics." *May Constr. Co., Inc. v. Benton Sch. Dist.*, 895 S.W.2d 521, 523 (Ark. 1995) (citing *The Random House Dictionary of the English Language* (2d ed. 1987)). In *May*, a school district sued a contractor for negligence and breach of warranties regarding a concrete floor, and the contractor filed a motion to compel arbitration. *May*, 895 S.W.2d at 522. The school district complained that the contractor improperly had used a substitute sealing which made the floor sticky and caused gross, unsightly scuff marks. *Id*. The court found that the claims were not arbitrable:

> If the appearance of the concrete floors was not "totally unacceptable" as the plaintiff contends, then there would be no claim. Granted, the plaintiff's complaint refers to May Construction's negligently supplying a defective product and breach of warranties. However, if the aesthetic effect of the floors was not unacceptable, the product would not be defective and the warranties would not be breached.

*Id*. at 523. The court in ***Flandreau Public School District v. G.A. Johnson Construction, Inc***., 701 N.W 2d 430 (S.D. 2005), relied on this same principle.

¶48. In ***Flandreau,*** the school district alleged that the contractor had used substandard materials and exhibited poor workmanship when it constructed the school's interior walls. ***Flandreau***, 701 N.W. 2d at 432-33. The contractor filed a motion to compel arbitration, which the court denied. *Id*. Relying on ***May***, the ***Flandreau*** court found that:

> [A] review of Flandreau's complaint and the undisputed facts reveal that Johnson's issues of "breach of contract" and "failure to comply with industry standards" are nothing more than the underlying reasons why Flandreau has an aesthetic claim. Paragraph nine of the complaint reflects that the claim relates to the "finish of the interior." Furthermore, paragraph seventeen only sought damages for the "appearance of plaintiff's building." Therefore, this claim was plainly one for the aesthetic effect of Johnson's work.

***Id.*** at 438. Because Flandreau's claims related to aesthetic effect, the court found that the claims were not arbitrable. ***Id.*** at 438-39.

¶49. Because, here, some claims relate to aesthetics and some do not, HCCL's case is not as easy to determine as ***May*** and ***Flandreau***. HCCL raised sixteen counts in its complaint. For the sake of clarity, we address each claim one-by-one.

## A. HCCL's Complaint

*Count I – Removal of Wrongful Construction Lien*

¶50. Because HCCL allegedly failed to pay Myrick, Myrick filed a construction lien against HCCL. The trial court did not mention this claim in its order and thus, by effect, ordered this claim to arbitration. HCCL argues that its refusal to pay is based on the building's unsatisfactory appearance, so the claims are related to aesthetic effect and not subject to arbitration. We disagree.

20

¶51.    The claim stems directly from Myrick's construction lien filed for nonpayment.  We decline to stretch the narrow, aesthetic-effect exception to include this claim.  The trial court properly ordered the claim to arbitration.

*Count II – Slander of Title and Motion for Injunctive Relief*

*Count III – Removal of Cloud on Title*

*Count IV – Abuse of Legal Process in Filing Lien*

¶52.    In count two, HCCL claimed "[t]he willful and malicious filing of the Notice of Construction Lien on May 27, 2009, constitutes a slander of title against HCCL."  HCCL makes similar claims in counts three and four.  Once again, these claims relate directly to Myrick's construction lien.  Thus, the trial court properly ordered these claims to arbitration.

*Count V – Breach of Contract*

¶53.    HCCL lodges various complaints in its breach-of-contract claim.  Given the general definition of the term, some claims arguably are related to aesthetic effect – performing the work in a sloppy, defective, and/or unworkmanlike manner and failing to submit a comprehensive list of items to be completed.  But several other complaints are not related to aesthetic effect – wrongfully filing a construction lien, making unauthorized changes to the work, failing to complete the work in a timely manner, submitting inflated and/or incorrect payment applications, failing to use Mike Penny as project manager, and failing to replace Scott Oliver with H. Gordon Myrick Jr. as project manager.  The trial court properly ordered the latter claims to arbitration.

*Count IV – Negligence*

21

¶54. Like the breach-of-contract claim, some of HCCL's negligence claims arguably are related to aesthetic effect: negligent construction and unworkmanlike construction. Others are not: failure to complete the project in a timely manner and within budget and deviating from the bid documents.[8] The trial court properly ordered the latter claims to arbitration.

*Count VII & VIII – Fraud and Intentional Misrepresentation*

*Count IX – Negligent Misrepresentation*

¶55. In these counts, HCCL alleges that Myrick filed incorrect payment applications, failed to complete the project in a timely and workmanlike manner, and failed to remove Scott Oliver as project manager as promised. These claims are not related to aesthetic effect and thus are subject to arbitration.

*Count X – Bad-Faith Breach of Agreement and Breach of Duty of Good Faith and Fair Dealing*

¶56. HCCL claims that Myrick intentionally misrepresented the payments owed to it, maliciously ceased work to force HCCL to pay, and improperly filed the lien against the building. These claims are not related to aesthetic effect and thus are subject to arbitration.

*Count XI – Accounting*

¶57. To prove whether Myrick submitted false payment applications, HCCL requests an accounting from Myrick. This claim is not related to aesthetic effect and thus is subject to arbitration.

*Count XII – Injunction to Prevent Further Slander of Title*

---

[8]For instance, HCCL alleges that Myrick deviated from the bid regarding heating and air conditioning units.

22

¶58.    As previously stated, the slander-of-title issue relates directly to Myrick's construction lien. This claim is not related to aesthetic effect and thus is subject to arbitration.

*Count XIII – Injunction Regarding Arbitration*

¶59.    In this count, HCCL alleges that the arbitration provision is invalid and unenforceable. As previously discussed in Section I of this memo, the arbitration agreement is valid and enforceable. This issue is without merit.

*Count IV – Damages*

¶60.    HCCL requests damages for each of its previous counts. All requests for damages, except those related to aesthetic effect, are subject to arbitration. We specifically address HCCL's claim for liquidated damages.

¶61.    The contract contained a liquidated-damages clause. HCCL claims the issue relates to aesthetic effect and thus is not subject to arbitration. The liquidated-damages clause, which was added by the parties, specifically provides:

> If substantial completion is not achieved by 210 days after date permit is issued, liquidated damages in the amount of $1,000 per day shall be payable by contractor to owner until such date as substantial completion is achieved. . . If substantial completion is achieved before 210 calender days after permit is issued, an early completion bonus of $1,000 per day shall be paid by Owner to Contractor.

Because this claim relates to timeliness (not aesthetic issues), the trial court properly ordered arbitration on the liquidated-damages claim. *See **Roosevelt Univ. v. Mayfair Constr. Co., Inc.**,* 331 N.E. 2d 835, 848 (Ill. 1975) (finding that a liquidation clause concerns the administration of the contract and thus is arbitrable).

**B.  Punch-List Items**

23

¶62.    As previously mentioned, HCCL submitted to the trial court a list of claims it deemed were related to aesthetic effect and thus not subject to arbitration. HCCL included the punch-list items it submitted to Myrick prior to the termination. In its order, the trial court picked which punch-list items it believed to be aesthetic and thus were not subject to arbitration. On appeal, HCCL argues that the trial court's order is not "workable." We agree.

¶63.    HCCL listed each aesthetic claim by its location in or around the building. For example, HCCL listed the following issues for the "south side" of the building:

> **South Side**
> Overhead light needs paint
> Left side of door no wall cover & not square
> Above door needs work
> Outside cove stucco is marked up
> Where stucco meets wood/gutter very rough on all south side doors

In its order, the trial court accepted the following claims as aesthetic and thus not subject to arbitration:

> **South Side**
> Overhead light needs paint
> Outside cove stucco is marked up
> Where stucco meets wood/gutter very rough on all south side doors

Thus, the remaining two claims – "[l]eft side of door no wall cover & not square" and "[a]bove door needs work"– were subject to arbitration. The trial court's order contains many other examples like this.

¶64.    As previously mentioned, the Court notes one ambiguity not raised by the parties – the definition of "aesthetic effect."[9] The parties provided a categorical description of items

---

[9]For instance, HCCL listed a complaint as "handles missing on many windows." Without a handle, it may be difficult to open and close a window – an issue of functionality.

24

not subject to arbitration (aesthetic-effect claims), but the parties failed to identify the standards to use to determine whether a claim is aesthetic. "Aesthetic effect" is a term of art, not a legal term, and it is not defined anywhere in the parties' contract. Thus, ambiguity exists regarding what that term means and what claims it covers. To resolve this ambiguity, the trial court should have utilized the applicable rules of contract construction.

¶65.    The Court has stated that

> Whenever the terms of a contract are susceptible of more than one interpretation, or an ambiguity arises, or the intent and object of the contract cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of making the contract . . . . The ambiguity may arise from words which are uncertain when applied to the subject matter of the contract.

*IP Timberlands Operating Co., Ltd. v. Denmiss Corp*., 726 So. 2d 96, 110 (¶59) (Miss. 1998) (citations omitted). Generally, courts look to the "four corners" of the contract to ascertain its meaning. In this case, the term "aesthetic effect" is not defined anywhere in the contract. Courts can use the plain and ordinary meaning of the term.[10] *See Dalton v. Cellular South, Inc.*, 20 So. 3d 1227, 1232 (¶10) (Miss. 2009). Where the language of the

---

But also, the missing handle could not be pleasing to the eye. So, is this an aesthetic claim? HCCL's punch list contains many other examples like this. Thus, on remand, it would be helpful for the trial court to determine whether functional issues are covered by the aesthetic-effect exception.

[10]Aesthetic is defined as (1) "relating to the philosophy or theories of aesthetics," (2) "of or concerning the appreciation of beauty or good taste: the aesthetic faculties," (3) "characterized be a heightened sensitivity to beauty," (4) "artistic," and (5) "conforming to accepted notions of good taste." *The American Heritage Dictionary of the English Language* 28 (3d ed. 1992).

25

contract is not helpful, extrinsic evidence may be considered, such as prevailing industry standards or commonly accepted trade usage. *Id*.

¶66. Because the contract does not define "aesthetic" and there was no evidence of a prevailing industry standard or commonly accepted trade usage of the term, the trial court had only the applicable dictionary definition.[11] The applicable dictionary definition must then be applied to each individual item to determine whether it is in the category of items excluded from arbitration. There is nothing in the record before this Court to indicate that this was done.

¶67. As a preliminary fact-finder, the trial court must determine which claims are arbitrable and which claims are subject to litigation. *Greater Canton Ford Mercury, Inc. v. Ables*, 948 So. 2d 417, 422 (¶12) (Miss. 2007). To do so, the trial court must determine the definition of "aesthetic effect" using the canons of contract construction, as aesthetic-effect claims are not subject to arbitration. The trial court determined which claims were arbitrable and which claims were subject to litigation. However, the trial court provided no reasoning for its selections during the hearing on the motion nor its order. This yielded inconsistent results in the trial court's order.

¶68. The Court cannot determine what the trial court relied upon in making its decision on the punch-list items. Thus, it is impossible for this Court to determine whether the trial court erred in its judgment. As previously discussed, the trial court must determine what "aesthetic effect" encompasses.

---

[11]*See supra* note 10.

26

¶69.   Therefore, we remand this case to the trial court on the punch-list items alone and instruct the trial court to provide reasoning for its aesthetic and nonaesthetic designation of those claims.

**CONCLUSION**

*HCCL's Claims on Appeal*

¶70.   The arbitration agreement is valid, unambiguous, binding and enforceable, and the contract expressed a clear agreement to arbitrate.  The trial court did not err by denying HCCL's motion to dismiss Myrick's motion to compel arbitration.  By filing a motion to compel arbitration, Myrick did not waive its right to arbitrate.  Error, if any, the trial court committed by accepting Connell's affidavit is harmless.  And HCCL's argument that all of its claims are aesthetic and thus not subject to arbitration is without merit.

*Myrick's Claims on Cross-Appeal*

¶71.   By submitting its aesthetic claims to mediation, HCCL did not waive its right to litigate those claims following unsuccessful mediation.  The trial court did not err by accepting HCCL's tardy aesthetic-effects submission.  And Myrick's argument that all of HCCL's claims should be subject to arbitration is without merit.

*Remand*

¶72.   Because it is difficult to determine why the trial court ordered certain punch-list items to arbitration and not others, we remand to the trial court to more clearly delineate which of the punch-list items are subject to arbitration and on what basis.

¶73.   **ON DIRECT APPEAL: AFFIRMED IN PART AND REMANDED.  ON CROSS-APPEAL: AFFIRMED IN PART AND REMANDED.**

27

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.**